UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CLARISSA R. McGARVEY,

    Plaintiff,

v.                                                                                   Case No: 8:14-cv-1792-T-AEP

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

    Defendant.
_____/

**ORDER**

Plaintiff seeks judicial review of the denial of her claim for a period of disability and disability insurance benefits ("DIB"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

**I.**

**A.**     **Procedural Background**

Plaintiff filed an application for a period of disability and DIB. (Tr. 125-26.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 62-77.) Plaintiff then requested an administrative hearing. (Tr. 79.) Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 35-61.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits. (Tr. 17-34.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied. (Tr. 1-3.) Plaintiff then timely filed a complaint with

this Court. (Dkt. No. 1.) The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

### B.     Factual Background and the ALJ's Decision

Plaintiff, who was born in 1966, claimed disability beginning January 28, 2011. (Tr. 125, 137.) She has a GED with some vocational training but no additional degree. (Tr. 39.) Plaintiff's past relevant work experience included work as a contract administrator, contract clerk, purchasing assistant, customer service clerk, and accounting clerk. (Tr. 131, 154.) Plaintiff alleged disability due to rheumatoid arthritis, Sjogren's syndrome, migraines, thyroid condition, sleeping difficulty, and foot problems in both feet (Tr. 140.)

After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: rheumatoid arthritis, Sjogren's syndrome, right temporomandibular joint (TMJ) syndrome, migraines, irritable bowel syndrome (IBS), Reynaud's syndrome, cervicalgia, and insomnia. (Tr. 22.) Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 23-24.) The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to:

> [P]erform sedentary work as defined in 20 CFR 404.1567(a) except: lift up to 10 pounds; sit up to 6 hours per day; stand or walk up to 2 hours per day; should never climb ladders, ropes, or scaffolds; only occasionally climb ramps or stairs, balance stoop, kneel, crouch or crawl; avoid extreme temperatures, humidity, pulmonary irritants, hazardous machinery, and heights; and must be in close proximity to the bathroom.

(Tr. 24.) In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that

reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (Tr. 25.)

Considering Plaintiff's noted impairments, RFC, and the assessment of a vocational expert ("VE"), the ALJ determined Plaintiff could perform all her past relevant work. (Tr. 28.) Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled. (Tr. 28.)

## II.

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. *Id.* §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. *Id.* § 404.1520(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Subpart P; and, considering the RFC assessment, whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five

of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. *Id.* A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam). Under the substantial evidence test, "findings of fact made by administrative agencies . . . may be reversed . . . only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), *cert. denied*, 544 U.S. 1035 (2005) (citation omitted). The Commissioner must apply the correct law and demonstrate that the Commissioner has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of witnesses. *Grant v. Richardson*, 445 F.2d 656, 656 (5th Cir. 1971) (per curiam).[2] Similarly, it is the responsibility of the Commissioner to draw

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Thus, the scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

## III.

Plaintiff challenges the ALJ's decision on two grounds:

(1) The ALJ Committed Reversible Error in the Evaluation of Plaintiff's Symptoms and Credibility

(2) The ALJ Committed Reversible Error in the Evaluation of Medical Opinions

For the reasons that follow, none of these contentions warrant reversal.

**A. The ALJ Properly Evaluated Plaintiff's Subjective Complaints and Credibility**

Plaintiff contends the ALJ erred in assessing Plaintiff's credibility and subjective complaints of pain. Upon review of the record, the ALJ's decision in this regard employed proper legal standards and is supported by substantial evidence.

In addition to the objective evidence of record, the Commissioner must consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective evidence and other evidence. *See* 20 C.F.R. § 404.1529. In social security disability cases, credibility determinations fall within the province of the ALJ.

*Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).  Typically, the ALJ makes credibility determinations regarding a claimant's subjective complaints and must provide specific reasons for the credibility finding.  *Holt v. Sullivan*, 921 F.2d 1221,1223 (11th Cir. 1991); SSR 96-7p, 1996 WL 374186 (S.S.A. July 2, 1996).  To establish a disability based on testimony of pain and other symptoms, the claimant must show (1) evidence of an underlying medical condition and either (2) objective medical evidence confirming the severity of the alleged symptoms or (3) that the objectively determined medical condition can reasonably be expected to give rise to the alleged symptoms.  *Wilson*, 284 F.3d at 1225; *see* 20 C.F.R. § 404.1529.  When the ALJ discredits the claimant's subjective testimony, the ALJ must articulate explicit and adequate reasons for doing so.  *Wilson*, 284 F.3d at 1225; *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  *Foote*, 67 F.3d at 1562.

The ALJ appropriately applied the three-prong test laid out by the Eleventh Circuit.  (Tr. 24-28).  *See Wilson*, 284 F.3d at 1225; *Holt*, 921 F.2d at 1223.  In applying the standard's second prong, the ALJ expressly noted a lack of objective evidence in the record. (Tr. 25-26.)  The ALJ's determination in this regard is supported by treatment notes which, despite diagnosis of rheumatoid arthritis, Sjogren's syndrome, and Reynuad's syndrome, note Plaintiff had a "[v]ery good response" to Actemra and Orencia medications.  (Tr. 336-37, 398.)  The record also notes Plaintiff reporting that she was doing well on multiple occasions to her treating-physician (Tr. 272, 279, 285), and that she retained the ability to write, button clothing with difficulty, and turn door knobs. (Tr. 330.)  Dr. Robert Shefsky found Plaintiff to have full range of motion in her shoulders, elbows, forearms, wrists, hips, knees, and ankles, with intact hand and finger dexterity and 5/5 grip strength bilaterally.  (Tr. 302.)  Moreover, despite a diagnosis of cervicalgia, a radiology report noted only

"mild" degenerative disc disease at C4 to C6, with no focal herniation and no significant stenosis. (Tr. 356-57.) The record also contains the finding of Dr. Alan Harris who opined that Plaintiff's mental impairments were not severe. (Tr. 308, 320.) This determination, as the ALJ expressly noted, appears to be corroborated by a complete absence of inpatient or outpatient mental health treatment. (Tr. 27, 297.) To quote Dr. Donald Morford's opinion, Plaintiff's complaints "far exceed the objective medical findings." (Tr. 340.) The record is, therefore, devoid of objective medical evidence confirming the alleged severity of Plaintiff's allegations.

Turning to the third prong relating to Plaintiff's subjective complaints, the ALJ concluded that although Plaintiff's medically determinable impairments could reasonably be expected to cause some of his alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible. (Tr. 25.) The ALJ's decision not to fully credit Plaintiff's subjective complaints in this regard is supported by substantial evidence. In making a credibility determination, the ALJ may consider whether any inconsistencies exist in the evidence and the extent to which any conflicts exist between a claimant's statements and the rest of the evidence. *See Foote*, 67 F.3d at 1562 (noting that a reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record); *see also Hutchinson v. Astrue*, 408 F. App'x 324, 327 (11th Cir. 2011) (discussing an ALJ's treatment of evidence otherwise inconsistent with the record).

Here, as the ALJ highlighted, such inconsistencies exist. (*See* Tr. 25-28.) Plaintiff testified at her hearing that she was unable to move her fingers, elbows, and feet due to rheumatoid arthritis. (Tr. 42-43.) As noted above, however, medical records indicate Plaintiff to have full range of motion of her elbows and full grip strength. (Tr. 302.) In August 2012, Plaintiff reported being able to move the digits of her right foot and Dr. Doug Moss is on record opining that Plaintiff's

bursitis was "almost completely resolved." (Tr. 433.) Moreover, as the ALJ noted, Plaintiff's allegations of being unable to walk one block do not appear to comport with treatment records indicating that Plaintiff does not use an assistive device to ambulate. (Tr. 295, 330, 343.) Nor do they account for Dr. Shefsky's observations of a mildly antalgic gait, normal stance, no acute distress, with no assistive device and the ability to get off the exam table without assistance. (Tr. 301.)

Furthermore, in terms of reported pain and other non-physical symptoms, Plaintiff's medical history appears to be in tension with her testimony. In April 2012 Plaintiff reported "manageable" migraines. (Tr. 370.) Additionally, Plaintiff's complaints of insomnia do not appear consistent with a December 2011 treatment record which reports that Plaintiff "is waking up rested and sleeps 8-10 hours." (Tr. 372.) The record also contains what appear to be inconsistencies regarding Plaintiff's levels of pain. Dr. Arthur Waldman described a "variation between allegations and findings," further noting apparent "belle indifference" from Plaintiff when describing severe pain. (Tr. 327.) Dr. Linda Appenfeldt further documented a May 2011 interaction with Plaintiff during which she conversed calmly and maintained concentration and normal social interaction despite evaluating her pain as an 8 on a scale of 1 to 10. (Tr. 295.)

Finally, as the ALJ's decision underscores, Plaintiff's decision to stop working in 2009 was reportedly due to the elimination of her position. (Tr. 260.) This statement, when taken in combination with the fact that Plaintiff found another job after February 2009 – a time period in which Plaintiff alleged her conditions to be severe enough to prevent her from working (Tr. 140) – serves as additional evidence undermining Plaintiff's credibility. *See* 20 C.F.R. § 404.1571 ("The work, without regard to legality, that you have done during any period in which you believe you are disabled may show that you are able to work at the substantial gainful activity level.")

Plaintiff attacks the ALJ's credibility finding by highlighting several pieces of the record and select portions of the ALJ's decision. Plaintiff contends the ALJ erred by considering the circumstances surrounding Plaintiff leaving employment in 2009—two years before the alleged disability period in the subject application for disability. Plaintiff also argues the ALJ erroneously based his credibility finding by misinterpreting Dr. Moss' comment regarding Plaintiff's healed bursitis, by relying on notation made by Dr. Azneer that Plaintiff was "doing well" in July 2009 (a date that predates the subject disability period), by misconstruing a statement by Dr. Morford made out of the greater medical context that Plaintiff was responding well to Actemra and Orencia, by observing that Plaintiff has not been hospitalized, and, finally, by failing to take into account Plaintiff's good work history in assessing credibility.

These contentions do not invalidate the ALJ's credibility finding. Plaintiff essentially invites this Court to analyze, reweigh, and eliminate certain pieces of evidence presented in support of said finding. The ALJ is entitled to, as he did here, consider a broad range of evidence in making a credibility finding. *See* SSR 96-7P (S.S.A. July 2, 1996) ("In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record") ("the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints."); 20 C.F.R. § 404.1529(c). To engage the merits of each piece of evidence Plaintiff submits would be to go beyond the scope of this Court's reviewing power because credibility determinations are within the province of the ALJ. *See Moore*, 405 F.3d

at 1212.  Moreover, even assuming arguendo that the above-mentioned challenges mounted by Plaintiff are correct and that those pieces of evidence should not have been considered, any error in incorporating them is harmless because the ALJ's decision is still, in their absence, supported by substantial evidence.  In sum, the ALJ's decision to not fully credit Plaintiff's subjective complaints is sufficiently detailed and supported by substantial evidence.  *See Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991) (finding substantial evidence supported the ALJ's conclusion that the claimant was not disabled when the ALJ found the claimant not credible because the claimant's subjective complaints of pain were inconsistent with the clinical findings of record); *Allen v. Schweiker*, 642 F.2d 799, 801 (5th Cir. 1981) (noting that the resolution of conflicting evidence is for the Secretary and the administrative law judge, rather than for the Court).

### B. The ALJ Properly Evaluated the Medical Opinions in the Record

Plaintiff contends the ALJ committed various errors in analyzing several medical opinions of record. For the following reasons, the ALJ employed proper legal standards and his determinations are supported by substantial evidence.

When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citation omitted).  The Social Security regulations provide guidelines for the ALJ to employ when evaluating medical opinion evidence.  *See* 20 C.F.R. § 404.1527.  In determining the weight to afford a medical opinion, the ALJ considers a variety of factors including but not limited to the examining relationship, the treatment relationship, whether an opinion is well-supported, whether an opinion is consistent with the record as a whole, and the area of the doctor's specialization.  20 C.F.R. § 404.1527(c).  For instance, the more a medical source presents evidence to support an opinion, such as medical signs and laboratory findings, the

more weight that medical opinion will receive. 20 C.F.R. § 404.1527(c)(3). Further, the more consistent the medical opinion is with the record as a whole, the more weight that opinion will receive. 20 C.F.R. § 404.1527(c)(4). Typically, the ALJ must afford the testimony of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (citation omitted). Good cause exists where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). In fact, the ALJ may reject any opinion when the evidence supports a contrary conclusion. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam).

### i. Dr. DiGiovanni's Opinion[3]

Plaintiff argues the ALJ erred in evaluating the opinion of Dr. Robert DiGiovanni because the ALJ's analysis is not supported by the record and fails to consider several pieces of evidence. To the extent Plaintiff argues that good cause does not exist to discount Dr. DiGiovanni's opinion, Plaintiff's argument is without merit. Moreover, upon review, the Court finds the ALJ properly considered all the evidence before him.

As expressly addressed in the ALJ's decision, Dr. DiGiovanni's opinion contains inconsistencies, is conclusory in nature and is not supported by the greater evidentiary record. Despite opining in November 2012 that Plaintiff was capable of walking less than one block (Tr. 390), at no point did Dr. DiGiovanni report that Plaintiff needed an assistive device to ambulate. (Tr. 382, 387, 391, 396, 401.) Indeed, Dr. DiGiovanni's November 2012 report expressly notes that Plaintiff does not need to use a cane or other assistive device for standing/walking. (Tr. 491.)

---

[3] The parties' joint memoranda refers to the Doctor as Dr. DiGiovanni. The Doctor's last name appears in two forms in the record: DiGiovanni and Giovanni. (*See* Tr. 493.)

Moreover, Dr. DiGiovanni's findings on multiple occasions did not include significant tenderness, synovitis, swelling nor pain in Plaintiff's joints, but did find full strength in upper and lower extremities and no noticeable neurological deficits. (Tr. 383-84, 387-88, 391-92, 396, 402.) These findings, which, once again, appear inconsistent with Dr. DiGiovanni's November 2012 opinion, are corroborated in the record by observations of Dr. Shefsky (Tr. 301-2) and Dr. Flaherty (Tr. 366, 370-78). Dr. DiGiovanni's November 2012 opinion that Plaintiff was incapable of performing even low-stress jobs due to cognition deficits that increase with stress (Tr. 492) is also inconsistent with his own observations**.** Dr. DiGiovanni observed Plaintiff to have "normal" cognition on several occasions and also found Plaintiff to have performed "very well" on a serial 7 test. (Tr. 384, 388, 396, 402.)

Plaintiff's attempt to challenge the ALJ's decision by pointing to various observations that the ALJ allegedly failed to weigh fails on two grounds. First, the ALJ need not refer to every piece of evidence in his decision. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision . . . ."). The ALJ's opinion with respect to Dr. DiGiovanni thoroughly details inconsistencies and other logical gaps in explaining why the Doctor's conclusions were granted minimal weight. (Tr. 28-29.) That the ALJ neglected to cite to the symptoms and observations Plaintiff submits by no means compels the conclusion that they were not fully considered. Second, as the Commissioner contends, the mere fact that a claimant is diagnosed with a condition or observed to have a symptom does not show that it automatically imposes functional limitations. *See McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality.").

Accordingly, substantial evidence supports the ALJ's decision to discount Dr. DiGiovanni's opinion.

### ii. Dr. Shefsky's Opinion

Plaintiff contends the ALJ erred in granting Dr. Shefsky's opinion considerable weight because the ALJ erroneously found Dr. Shefsky to opine that Plaintiff could stand and walk four hours a day. Because of this and the purported limited value of the balance of Dr. Shefsky's opinions and observations, Plaintiff argues they do not constitute substantial evidence to support the RFC.

While, as the Commissioner concedes, the ALJ was mistaken in incorporating this finding into his decision, the mistake is harmless and Plaintiff has not carried her burden in showing it to be harmful error. *See Shinseki v. Sanders*, 556 U.S. 396, 410 (2009) (stating that "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination"); *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) ("However, there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record" (citation omitted)). The RFC limits Plaintiff to standing/walking no more than two hours per workday. (Tr. 24.) Furthermore, the residual aspects of Dr. Shefsky's opinion constitute substantial evidence in support this limitation. Dr. Shefsky found Plaintiff to have normal stance, the ability to walk on her heels, get herself off the examination table, and walk without an assistive device. (Tr. 301.) Dr. Shefsky's examinations further revealed no muscle atrophy, full range of motion in Plaintiff's shoulders, elbows, forearms, wrists, hips, knees and ankles, stable and non-tender joints, normal reflexes, full motor strength bilaterally, and no redness, heat, swelling or effusion. (Tr. 301-02.) He also found no evidence of impaired judgment,

no evidence of significant memory impairment, normal affect, and, overall, gave Plaintiff a stable prognosis. (Tr. 302-03.) Therefore, for the foregoing reasons, the ALJ did not commit harmful error in analyzing Dr. Shefsky's opinion, and appropriately relied on it in forming Plaintiff's RFC, which itself is distinct from medical opinions or assessments. *See* 20 C.F.R. § 404.1513(b) & (c), 404.1527, 404.1545 (explaining that a claimant's RFC is the adjudicator's ultimate finding based on all evidence in the record, including doctors' opinions).

### iii. Dr. Appenfeldt's Report

Plaintiff argues the ALJ erred by giving considerable weight to Dr. Appenfeldt's opinion. Specifically, Plaintiff contends Dr. Appenfeldt, as a psychologist, is not qualified to render opinions of Plaintiff's physical limitations and retained physical capacities.

Plaintiff's argument is without merit. The ALJ analyzed Dr. Appenfeldt's observations regarding Plaintiff's reported pain,[4] as well as Plaintiff's ability to perform work-related mental activities. (Tr. 27-28.) As detailed throughout, Dr. Appenfeldt's findings in this arena, as well as the Doctor's physical observations, are consistent with other medical opinions of record. The ALJ subsequently noted that Dr. Appenfeldt's opinions were "granted considerable weight since they considered [Plaintiff's] subjective complaints and [resulted from] a thorough review of the file." (Tr. 28.) Nowhere in the ALJ's decision does he state that he relied on Dr. Appenfeldt's medical opinion or expertise regarding Plaintiff's physical functional capacity. At most, the Commissioner relies on Dr. Appenfeldt's *observations* of Plaintiff's physical capabilities as displayed during her examinations. Even assuming such observations and findings constitute non-medical source information, which is an extreme premise given Dr. Appenfeldt's medical training as a

---

[4] Plaintiff's counsel's flippant statement that Plaintiff "should not be required to be a drama queen about her pain in order to be considered disabled," is inappropriate and does nothing to aid the Court in its determination. The Court reminds counsel that he is an Officer of this Court, and, as such, a certain level of decorum is expected in all pleadings and arguments.

psychologist, the regulations expressly contemplate that such evidence may be used as evidence of the severity of Plaintiff's impairments and her ability to work. *See* 20 C.F.R. § 404.1513(d)(4) (noting that an ALJ "may use" third party (non-medical source) information and observations in determining a claimant's RFC and assessing credibility). Furthermore, Dr. Appenfeldt's opinions regarding Plaintiff's reaction to reported pain levels and resulting mental function are well within the scope of her examining expertise as a psychologist. The undersigned thus finds no error in the ALJ assigning Dr. Appenfeldt's opinions considerable weight.

### iv.  Dr. Morford's Opinion

Plaintiff argues the ALJ also erred in his evaluation of non-examining consultant, Dr. Morford. Upon review, the ALJ properly assigned Dr. Morford's opinion considerable weight.

Plaintiff takes issue with the information available at the time of Dr. Morford's review, asserting that the July 2011 opinion does not account for later developments in the record. Plaintiff also contends that the opinion of the non-examining Doctor should be entitled to little weight and, taken alone, does not constitute substantial evidence. None of these contentions hold.

Turning first to Plaintiff's second argument, as the Social Security Regulations dictate, "[f]indings of fact made by State agency medical and psychological consultants . . . regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources." S.S.R. 96-6p, 1996 WL 374180, at *1 (S.S.A. July 2, 1996). State agency medical physicians' opinions may be entitled to greater weight than the opinions of treating or examining sources. *Id.* at *3. The weight afforded to State agency medical physicians' opinions may vary, depending on the extent to which the findings are "supported by clinical findings and [are] consistent with other evidence." *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 873 (11th Cir. 2011) (citing 20 C.F.R. § 404.1527(c)(3)-(4); *Crawford*, 363 F.3d at 1158, 1160). Here, a

large basis of evidence supports Dr. Morford's opinion that Plaintiff could perform sedentary work with some postural and environmental limitations. (*See* Tr. 335-42.) As detailed above, portions of Dr. DiGiovanni's findings, Dr. Flaherty's examination, Dr. Shefsky's findings, as well as Dr. Appenfeldt's opinions are consistent with Dr. Morford's conclusion. Furthermore, Dr. Morford's reference to Plaintiff's daily activities, which support his opinion, are also corroborated by the record. (*Compare* Tr. 168 *with* Tr. 336.)

Finally, Plaintiff's contention that Dr. Morford's opinion is somehow rendered invalid because it did not benefit from subsequent medical observations and developments is also meritless. While a review of the complete case record is one example of a situation in which a State agency opinion may be entitled to greater weight than opinions of treating or examining sources, *see* S.S.R. 96-6p, 1996 WL 374180 at \*3, it is not a necessary condition to such an outcome. Plaintiff cites no legal authority in support of the proposition that the ALJ erred by relying on Dr. Morford's opinion, rendered in July 2012, because it was only informed by records from a certain segment of the alleged disability period. Indeed, not only did the ALJ rely on Dr. Moford's opinion in combination with other supporting evidence of record (Tr. 28.), but the opinion is based on data covering a significant time period within which Plaintiff is required to establish she was under a disability that has lasted or could be expected to last for a continuous period of at least twelve months. *See* 20 C.F.R. § 404.1505(a). The ALJ, therefore, did not commit reversible error in evaluating Dr. Morford's findings.

**IV.**

Accordingly, after due consideration and for the foregoing reasons, it is hereby ORDERED:

1. The decision of the Commissioner is AFFIRMED.

2. The Clerk of Court is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 30th day of September, 2015.

ANTHONY E. PORCELLI
United States Magistrate Judge

cc:  Counsel of Record